# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01111-COA

**KIMBERLY DAWN HARPER A/K/A**                              **APPELLANT**
**KIMBERLY HARPER**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

DATE OF JUDGMENT:   09/23/2024
TRIAL JUDGE:     HON. LISA P. DODSON
COURT FROM WHICH APPEALED: HANCOCK COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:  JACOB WAYNE HOWARD
ATTORNEY FOR APPELLEE:  OFFICE OF THE ATTORNEY GENERAL
          BY: ALEXANDRA LEBRON
NATURE OF THE CASE:   CIVIL - POST-CONVICTION RELIEF
DISPOSITION:     REVERSED AND RENDERED - 10/21/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. Kimberly Harper appeals from the denial of a motion for post-conviction relief (PCR). Harper argues that the circuit court unlawfully ordered her to serve the entire remainder of her suspended sentence in the custody of the Department of Corrections based on her second revocation for violating the conditions of her post-release supervision (PRS). We agree with Harper. Therefore, we reverse the order denying Harper's PCR motion and render judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. In 2015, Kimberly Harper pled guilty to possession of a controlled substance (Charge One) and possession of a controlled substance with intent to transfer (Charge Two). The court sentenced Harper to consecutive terms of eight years "for a total of SIXTEEN (16)

Years with SIX (6) Years of this term incarcerated . . . and the remaining TEN (10) Years suspended." The court ordered that following her release from incarceration, Harper would be placed on "Reporting" PRS for four years and "Non-Reporting" PRS for the remainder of her suspended sentence.

¶3. Harper was released on PRS in May 2018. On March 8, 2022, the State filed a petition to revoke Harper's PRS, alleging that she "ha[d] not been able to pay . . . $715.00 in overdue [supervision] fees" to the Mississippi Department of Corrections (MDOC) and "ha[d] not been able to make her monthly payments" on her fines and court costs. The petition noted that Harper's term of reporting PRS would end on May 22, 2022.

¶4. The court did not issue a revocation warrant, and Harper was never in custody because of the petition. At Harper's revocation hearing in April 2022, she told the judge she had been unable to make her payments because her husband had died while she was in prison, she had lost her job during COVID-19, and she was trying to pay rent and support herself and her teenage son on a $1,000 monthly Social Security survivor benefit. Harper was also in school full-time at a community college. The judge noted that Harper had paid a total of $298 in fines and costs but still owed $4,101. The judge found, and the State agreed, that Harper had complied with all conditions of her PRS other than "the financial part." The judge found there were "some mitigating circumstances," but "there were some times [Harper was] working [and] could have been making payments and . . . didn't." The judge then stated, "So I'm not going to revoke your [PRS], but . . . I am going to extend it for an additional year, give you time to try to get this tended to, and then we'll see where we stand."

2

¶5.     Following the hearing, the judge entered an order finding that Harper had violated the terms and conditions of her PRS. The order then stated:

> However, the Court does not revoke the Defendant's Reporting [PRS] on [both charges] at this time. It is, therefore, ORDERED that the Defendant is allowed to remain on her original Four (4) Years Reporting [PRS] with the same terms and conditions as previously ordered. However, the Court hereby extends this Defendant's Reporting [PRS] for One (1) Additional Year for a total of Five (5) Years Reporting [PRS].

¶6.     On September 28, 2022, the State filed a second petition, alleging that Harper violated the terms of her PRS by "fail[ing] to report since May 10, 2022," and failing to make her monthly payments. At the October 2022 revocation hearing, Harper admitted she had failed to report and make payments. She said she was "in a very bad accident and . . . lost [her] vehicle just after [the prior hearing] in April," which made it difficult to report. She said she had recently "acquired a ride and a job" at a restaurant, and if she could remain on PRS, and if the judge could reduce her monthly payment to $50, she "could better afford it." But she admitted she "did not try hard enough" to report or communicate with her probation officer. The judge found that Harper had violated the terms of her PRS by failing to report and make payments. The judge stated that under the revocation statute, the violations "would result in [Harper] serving up to 90 days in a technical violation center" (TVC), and the State recommended "90 days at the TVC." The judge instead sentenced Harper to serve thirty days at the TVC with credit for time she had already spent in jail awaiting her revocation hearing. The judge then warned Harper to report and make her payments because "the next time [would] be [her] third petition," at which point the judge could "revoke [Harper's PRS] and give [Harper her] entire sentence." Harper said she understood.

3

¶7. Following the hearing, the judge entered an order finding that Harper had violated the terms of her PRS. The order then stated: "However, the Court does not revoke [Harper's] Reporting [PRS] at this time . . . . It is, therefore, ORDERED that [Harper] shall serve Thirty (30) days in [MDOC] custody . . . at a [TVC] with credit only for time served while awaiting this Revocation hearing." Harper was released from the TVC in November 2022.

¶8. One year later, the State filed a third revocation petition, alleging Harper had violated her PRS by failing "to abstain from using narcotic drugs." At the hearing, Harper's probation officer testified that Harper "would report but not . . . on [her] specific report dates." In November 2023, Harper admitted to her probation officer that "she had hit the meth pipe," and she tested positive for methamphetamine. This occurred after Harper's boyfriend was charged with simple domestic violence against her. Harper was not charged in the incident. Harper testified that she was still in school, had a job, and had been making her monthly payments. She said she "relapsed when [she] and [her] boyfriend had a fight." She claimed she went "to a meeting the very next day" and "reported on time" to her probation officer even though she "knew [she] was going to fail the drug test."

¶9. The judge found Harper was "in violation for the third time," revoked her PRS, and imposed the remainder of her suspended sentences (ten years total). The judge's subsequent written order imposed Harper's "original term of Eight (8) Years to serve in [Charge One] and original term of Eight (8) Years to serve in [Charge Two] to run consecutive to each other for a total of Sixteen (16) Years, with credit for the Six (6) Years previously served," "leaving a term of Ten (10) Years to serve in [MDOC] custody."

4

¶10. In April 2024, Harper filed a PCR motion. She first argued that she had already served her entire eight-year sentence for Charge One before her final revocation. Therefore, she argued that the judge erred by ordering her to serve any part of her sentence for Charge One. Harper also argued that the judge's April 2022 order extending her PRS was not a "revocation" within the meaning of the revocation statute, Miss. Code Ann. § 47-7-37(5) (Rev. 2023). Therefore, she argued that her November 2023 revocation was, at most, her second revocation related to Charge Two, and the maximum punishment authorized by the revocation statute was 120 days in a TVC. Accordingly, she argued that the judge also erred by imposing her entire suspended sentence for Charge Two.

¶11. The State answered and denied that Harper was entitled to relief. As relevant for purposes of this appeal, the State argued that the judge's April 2022 order and extension of Harper's PRS was a "revocation."

¶12. Following a hearing, the judge entered an order finding that Harper had served her entire sentence for Charge One prior to the first revocation petition. Therefore, the judge granted Harper's PCR motion in part and set aside her revocation order to the extent it imposed two years of Harper's suspended sentence for Charge One.

¶13. However, the judge denied Harper's motion to the extent it challenged the imposition of the remainder of Harper's eight-year sentence for Charge Two. Specifically, the judge rejected Harper's argument that the April 2022 order was not a "revocation" within the meaning of the revocation statute, Miss. Code Ann. § 47-7-37(5). The judge reasoned that the April 2022 order was a revocation within the meaning of the statute because the court

5

found that Harper had violated the conditions of her PRS following the filing of a revocation petition and a revocation hearing. The judge stated it was immaterial that the order stated she did "not revoke" Harper's PRS. The judge explained,

> It is and has been this Court's understanding that to "revoke" one's Probation or PRS is to take away that Probation or PRS and impose some or all of the suspended sentence. And that is how this Court used that term in Harper's revocations. In other words, Harper's PRS was not being taken away in either the First Revocation or the Second Revocation. Nor was any portion of her suspended sentences being imposed.

In essence, the judge explained that her prior orders had used the term "revoke" based on the judge's understanding of the term's common meaning, not its meaning under the revocation statute. The judge also noted that *both* her April 2022 order *and* her October 2022 order stated that she did "not revoke" Harper's PRS; however, Harper acknowledged that the October 2022 order *was* a revocation within the meaning of the statute. The judge noted that Harper could not "explain how the two [orders] differ since the language was the same."

¶14.    Harper filed a notice of appeal.

## ANALYSIS

¶15.    On appeal, Harper argues that the circuit court's April 2022 order was not a "revocation" within the meaning of Mississippi Code Annotated section 47-7-37(5)(d); therefore, she contends her November 2023 revocation was only her *second* revocation, and the circuit court lacked authority under the statute to impose her full remaining suspended sentence. Harper's appeal raises an issue of statutory interpretation that we review de novo. *Atwood v. State*, 183 So. 3d 843, 845 (¶5) (Miss. 2016).

¶16.    Section 47-7-37 provides in relevant part:

6

For an offender charged with a technical violation who has not been detained awaiting the revocation hearing, the court may hold a hearing within a reasonable time. The court may revoke probation or may continue probation and modify the terms and conditions of probation. If the court revokes probation for one or more technical violations the court shall impose a period of imprisonment to be served in either a technical violation center operated by the department or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation. For the third revocation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent revocation, the court may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner.

Miss. Code Ann. § 47-7-37(5)(d).[1] As stated above, the threshold issue in this appeal is whether the circuit court's April 2022 order was a "revocation" within the meaning of the statute. If it was not, then the circuit court's November 2023 order was only Harper's second "revocation," and the circuit court was not authorized to order Harper to serve her full remaining suspended sentence.

¶17. In addressing this issue, it is useful to understand the history of section 47-7-37.[2]

---

[1] Paragraph (5)(d) applied to Harper's first revocation petition and hearing because Harper was not "detained awaiting the revocation hearing." *Id.* Paragraphs (5)(a), (5)(b), and 5(c) apply to revocations following the issuance of a revocation warrant. All four paragraphs use substantially similar language regarding the maximum punishments for a first, second, third, or subsequent "revocation." In addition, although these paragraphs refer to "probation," the statute provides that the "revocation and recommitment procedures of this section also apply to persons who are serving a period of post-release supervision imposed by the court." Miss. Code Ann. § 47-7-37(9).

[2] *See McNair v. M.L. Virden Lumber Co.*, 193 Miss. 232, 4 So. 2d 684, 687-88 (1941) (determining a statute's "purpose" by comparing its "old" and "new" versions); *see also Boring v. State*, 365 So. 2d 960, 962 (Miss. 1978) ("This Court should examine the history of a statute in order to find its meaning.").

7

Prior to 2014, section 47-7-37 provided that upon finding *any* probation violation, the court could "continue or revoke all or any part of the probation or the suspension of sentence, and [could] cause the sentence imposed to be executed or [could] impose any part of the sentence which might have been imposed at the time of conviction." Miss. Code Ann. § 47-7-37 (Rev. 2011). Thus, prior to 2014, a judge could order an offender serving a suspended sentence to serve the full remainder of the suspended sentence based on a first revocation for a single probation violation. *Id.*

¶18. In 2014, as part of a wide-ranging criminal justice reform bill, the Legislature amended section 47-7-37 to provide as follows in paragraph (5)(d):

> If the court revokes probation for a technical violation the court shall impose a period of imprisonment to be served in either a technical violation center operated by the department or a restitution center not to exceed ninety (90) days *for the first technical violation* and not to exceed one hundred twenty (120) days *for the second technical violation. For the third technical violation*, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. *For the fourth and any subsequent technical violation*, the court may impose up to the remainder of the suspended portion of the sentence.

2014 Miss. Laws ch. 457, § 58 (H.B. 585) (emphasis added). The Mississippi Supreme Court interpreted this language to authorize a court to order an offender to serve the full remainder of his suspended sentence if the court found that he had committed three or more "technical violations"—even if the court made that finding during a *first or second revocation. Walker v. State*, 230 So. 3d 703, 705-06 (¶¶10-13) (Miss. 2017).

¶19. In response to the Supreme Court's decision in *Walker*, the Legislature amended subsection 47-7-37(5) during the 2018 legislative session. *See* 2018 Miss. Laws ch. 416,

8

§ 11 (H.B. 387). In relevant part, the statute now reads as quoted above (*see supra* ¶16) and provides for increasing punishments for a "first revocation," a "second revocation," a "third revocation," and, finally, a "fourth [or] subsequent revocation." Miss. Code Ann. § 47-7-37(5)(d) (Rev. 2023). The statute expressly recognizes that a "revocation" may involve "one or more technical violations." *Id.* Thus, the punishment authorized for a probation violation now turns on how many times the offender's probation has been *revoked*—not how many individual violations he has committed or how many times he has been found in violation of the conditions of his probation or PRS.

¶20. In the present case, it is undisputed that Harper's PRS has been revoked twice—in October 2022 and November 2023. However, Harper and the State dispute whether the circuit court's April 2022 order constituted her first "revocation" within the meaning of the statute. We conclude that it did not.

¶21. To begin with, the statute provides that "[i]f the court revokes probation for one or more technical violations, the court *shall* impose a period of imprisonment to be served in either a technical violation center . . . or a restitution center not to exceed ninety (90) days for the first revocation . . . ." *Id.* (emphasis added). "A basic tenet of statutory construction is that 'shall' is mandatory and 'may' is discretionary." *Khurana v. Miss. Dep't of Revenue*, 85 So. 3d 851, 854 (¶9) (Miss. 2012) (quoting *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 115 (¶15) (Miss. 2003)). Therefore, a "first revocation" under the statute *must* result in a "period of imprisonment" in a TVC or a restitution center. The final sentence of paragraph (5)(d) underscores this point, stating that "[t]he period of imprisonment in a

technical violation center imposed under this section *shall not be reduced in any manner*." Miss. Code Ann. § 47-7-37(5)(d) (emphasis added). Thus, there is no "first revocation" under the statute unless a "period of imprisonment" is imposed.[3]

¶22. The circuit court's April 2022 order does not qualify as a "revocation" because Harper was not required to serve any time in a TVC or a restitution center. Rather, as discussed above, the judge did not order Harper to serve any "period of imprisonment." In fact, no warrant had been issued for Harper's arrest for a probation violation, and Harper was never in custody as a result of the violations. Rather than revoking Harper's PRS, the court chose to extend Harper's reporting PRS for one additional year.

¶23. Importantly, the statute provides that if a court finds that an offender has committed a technical violation, "[t]he court *may* revoke probation *or may continue probation and modify the terms and conditions of probation*." Miss. Code Ann. § 47-7-37(5)(d) (emphasis added). As stated above, "[a] basic tenet of statutory construction is that . . . 'may' is discretionary." *Khurana*, 85 So. 3d at 854 (¶9) (quoting *Franklin*, 858 So. 2d at 115 (¶15)). Thus, a court is not required to "revoke probation" and impose a period of imprisonment upon finding that an offender has committed a technical violation. Rather, the court has *discretion* to instead continue and modify the terms and conditions of probation.[4] That is what the circuit court did in this case when it declined to revoke Harper's PRS and, instead,

___

[3] Of course, the offender may be given credit for time served in custody awaiting his revocation hearing.

[4] The statute is consistent with Mississippi Rule of Criminal Procedure 27.3(g), which provides that if a court "finds that a violation of the conditions of probation or lawful instructions occurred, it may revoke, modify, or continue probation."

extended her reporting PRS for one year.

¶24.    When the circuit court denied Harper's PCR motion, the court emphasized that *both* her April 2022 order *and* her October 2022 order stated that she did "not revoke" Harper's PRS, yet Harper conceded that the October 2022 order *was* a revocation within the meaning of the statute.  The judge reasoned that *both* orders were revocations because Harper could not "explain how the two [orders] differ since the language was the same."  However, there *is* a critical difference between the two orders: unlike the April 2022 order, the October 2022 order *did* "impose a period of imprisonment" (thirty days) in a TVC.  Miss. Code Ann. § 47-7-37(5)(d).  Therefore, despite the October 2022 order's statement that the court did "not revoke" Harper's PRS, that order was, in fact, a "revocation" within the meaning of the statute.  *Id.*  We hold that the April 2022 order was not a revocation—but not because the judge stated that she was "not revoking" and did "not revoke" Harper's PRS at that time.  Rather, we hold that it was not a revocation because the court *did not revoke Harper's PRS within the meaning of the statute*—i.e., the court did not "impose a period of imprisonment" at a TVC or restitution center.

¶25.    On appeal, the State argues that the law does not require courts to use "certain magic words when revoking a defendant's PRS under the statute."  The State further argues that the April 2022 order should count as Harper's first revocation because the circuit court found that she had violated the terms of her PRS and imposed a sanction by extending her reporting PRS for one year.  We agree with the State that no "magic words" are required for an order to qualify as a revocation.  However, under the plain language of the statute, an order does

11

not qualify as a "first revocation" unless the court imposes a *particular kind of sanction*—"a period of imprisonment" in a TVC or restitution center. Miss. Code Ann. § 47-7-37(5)(d). Again, our holding is not based on any particular or "magic words" the April 2022 order included or lacked. Rather, the April 2022 order was not a "revocation" within the meaning of the revocation statute in form *or substance*.

¶26. Finally, the State emphasizes that during Harper's second revocation hearing in October 2022, the judge warned Harper that her "next" revocation would be her "third" and could result in the imposition of her "entire [suspended] sentence." But the judge's warning cannot retroactively transform the April 2022 order into something it was not. Whether an order is a "revocation" under the statute depends on what the court actually *does*—i.e., what kind of sanction it imposes or modification it orders. It does not depend on how the court labels or characterizes the order on some later occasion. *Cf. Wilson v. Freeland*, 773 So. 2d 305, 308 (¶9) (Miss. 2000) ("The character of a judgment is to be determined from its substance and not from its caption.").

¶27. Because the circuit court's April 2022 order was not a "first revocation" within the meaning of section 47-7-37(5), it follows that the circuit court's November 2023 order was only Harper's *second* revocation under the statute, not her third. The maximum period of imprisonment that may be imposed for a second revocation is 120 days in a TVC center or restitution center. Therefore, the circuit court unlawfully ordered Harper to serve her full remaining suspended sentence, and the circuit court erred by denying Harper's subsequent PCR motion. Accordingly, we reverse the circuit court's order denying Harper's PCR

12

motion and render judgment as follows: the November 2023 revocation order is set aside to the extent it imposed an unlawful sentence, and because Harper has already served more than the maximum allowable sentence for her second revocation, she is ordered to be released without delay.

¶28. **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**